IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANFRED HACKER,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID PETERSCHMIDT, et al.,<br><br>    Defendants.<br>_____/ | Nos. C 06-03468, C 06-04479, C 06-04509, C 06-04524 SI<br><br>**ORDER GRANTING PLAINTIFFS SHERUPSKI AND HACKER'S MOTION TO CONSOLIDATE ACTIONS AND APPOINT LEAD PLAINTIFF AND LEAD COUNSEL** |

On September 29, 2006, the Court heard argument on plaintiffs Henry Sherupski and Manfred Hacker's motion to consolidate actions and appoint lead plaintiff and lead counsel. Having considered the arguments of counsel and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiffs Sherupski and Hacker's motion.

**BACKGROUND**

Plaintiffs Henry Sherupski and Manfred Hacker filed the instant motion on August 21, 2006, seeking an order from the Court (1) consolidating four related shareholder derivative actions[1] now pending on behalf of Openwave Systems, Inc. ("Openwave") against certain of its officers and directors; and (2) appointing Henry Sherupski and Manfred Hacker as lead plaintiffs and their counsel, Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") and Scott & Scott, LLC ("Scott & Scott"), as lead counsel. On August 28, 2006, James Koning, plaintiff in another of the four derivative actions, joined in the instant motion. Plaintiff in the fourth action, Claude P. Bowie, Jr., has

---

[1] The four actions are *Hacker v. Petershcmidt*, No. C-06-03468; *Sherupski v. Puckett*, No. C-06-04524; *Koning v. Puckett*, No. C-06-04509, and *Bowie v. Black*, No. C-06-04479.

filed an opposition to Sherupski and Hacker's motion to appoint themselves lead plaintiffs and their counsel lead counsel. Bowie requests that the Court appoint him lead plaintiff, and his counsel lead counsel, with respect to just two of the many causes of action brought by the plaintiffs. Bowie does not oppose the motion to consolidate.

All four actions involve allegations of stock option backdating by top insiders of Openwave between 1999 and 2006. The actions allege that this backdating, involving the illegal diversion of millions of dollars, caused Openwave to issue materially false and misleading financial statements in violation of the federal securities and state corporation laws.

The *Sherupski* complaint alleges the following causes of action against the entire board of directors and various officers: (i) violations of section 10(b) and Rule 10b-5 of the Exchange Act, (ii) violations of section 14(a) of the Exchange Act, (iii) violations of section 20(a) of the Exchange Act, (iv) a demand for an accounting of all stock options grants, (v) breach of fiduciary duty and/or aiding and abetting, (vi) abuse of control, (vii) gross mismanagement, (viii) constructive fraud, (ix) corporate waste, (x) unjust enrichment, (xi) rescission, (xii) violation of California Corporations Code section 25402, and (xiii) breach of fiduciary duties for insider selling and misappropriation.

The *Hacker* complaint alleges the following causes of action against the directors and various officers: (i) breach of fiduciary duty, (ii) abetting a breach of fiduciary duty, (iii) unjust enrichment, and (iv) rescission.

The *Koning* complaint alleges the following causes of action against the directors and various officers: (i) a demand for accounting of all stock option grants, (ii) breach of fiduciary duty and/or aiding and abetting, (iii) abuse of control, (iv) gross mismanagement, (v) constructive fraud, (vi) corporate waste, (vii) unjust enrichment, (viii) rescission, (ix) violation of California Corporations Code section 25402, and (x) breach of fiduciary duties for insider selling and misappropriation of information.

The *Bowie* complaint alleges the following causes of action against the directors and various officers: (i) violations of section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, (ii) violations of section 20(a) of the Exchange Act, (iii) breach of fiduciary duties, (iv) a demand for accounting of all stock option grants, (v) abuse of control, (vi) gross mismanagement, (vii) constructive fraud, (viii) corporate waste, (ix) unjust enrichment, and (x) rescission.

All four cases are in the very early stages of litigation; no discovery has been taken, nor any answers or substantive motions filed. Sherupski and Hacker together hold over 5,500 shares of Openwave common stock, with a current value of over $42,500. *See* Mot. 4:5-7, Downs Decl., Ex. E.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). Upon consolidation, pursuant to Rule 42(a), the district court, "if it sees fit, may appoint one or more attorneys as liaison counsel, lead counsel, or trial counsel for the consolidated cases and accordingly assign the designated lawyers specific responsibilities." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Federal Rules of Civil Procedure* § 2385 (2006).

Federal Rule of Civil Procedure 23.1 provides general guidance for selecting an adequate plaintiff in derivative actions by shareholders, stating in pertinent part: "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interest of the shareholders or members similarly situated in enforcing the right of the corporation or association."[2] According to the Ninth Circuit, for purposes of Rule 23.1, "[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class." *See Larson v. Dumke*, 900 F.2d 1363, 1367

---

[2] The case cited by Sherupski and Hacker as the legal standard for appointment of lead plaintiff and counsel, *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Del. Ch. Oct. 17, 2000), involved consolidation of class and individual actions, which require a different set of considerations than pure derivative shareholder actions. The selection of lead plaintiff and counsel in shareholder class actions is governed by Federal Rule of Civil Procedure 23(a) and section 21(d) of the Private Securities Litigation Reform Act of 1995 (PSLRA). *See* 15 U. S.C. § 78u-4(a)(3). The Ninth Circuit provided additional, specific guidance for selecting lead plaintiffs in securities class actions in *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). These rules do not apply to a pure derivative shareholder action brought on behalf of the corporation under Rule 23.1.

(9th Cir. 1989) (citing *Lewis v. Curtis*, 671 F.2d 779, 788-89 (3d Cir.), cert. denied, 459 U.S. 880, 74 L. Ed. 2d 144, 103 S. Ct. 176 (1982); *Owen v. Modern Diversified Industries, Inc.*, 643 F.2d 441, 443-44 (6th Cir. 1981) (no antagonistic interests); *GA Enterprises, Inc. v. Leisure Living Communities, Inc.*, 66 F.R.D. 123, 125-27 (D. Mass. 1974), aff'd, 517 F.2d 24, 26-27 (1st Cir. 1975)). The Ninth Circuit has further held that "an evaluation of [the following] factors is important in determining the adequacy of representation by a derivative plaintiff under Rule 23.1":

> "(1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other shareholders; . . . (5) the lack of any personal commitment to the action on the part of the representative plaintiff"; *Rothenberg v. Security Management Co.*, 667 F.2d 958, 961 (11th Cir. 1982) (citations omitted), (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants. *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir. 1980).

*Larson*, 900 F.2d at 1367. "These factors are intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1." *Id.* (internal quotation omitted). While these factors are usually used to determine the adequacy of a plaintiff facing a motion to dismiss, motion for summary judgment, or other substantive motions, they appear suitable as well for informing the selection of a lead plaintiff at the consolidation stage.

## DISCUSSION

**I.     Consolidation**

The four related cases at issue all arise from the same alleged backdating of stock options by Openwave, and allege substantially overlapping causes of action. The cases thus involve common questions of law and fact, and appear ripe for consolidation. There is no opposition to consolidation, and the Court ORDERS all four derivative action consolidated for all purposes, including trial, under Rule 42(a).

4

## II.     Lead plaintiffs and counsel

Sherupski and Hacker argue that they should be appointed lead plaintiffs because: (1) they engaged in careful investigation resulting in quality pleadings; (2) they have a significant financial interest in the outcome of this litigation, as collectively they own over 5,500 Openwave shares; and (3) "Sherupski has confirmed his desire to zealously prosecute this action by lodging a Freedom of Information Act request with the SEC and making a shareholder inspection demand upon the Company" (Mot. 9:20-10:2).

Bowie does not seek to be named lead plaintiff for the entire action, but rather seeks to be named lead plaintiff only with respect to the alleged violations of sections 14(a) and 20(a) (as it relates to section 14(a)) of the Exchange Act (claims (ii) and (iii) of the *Sherupski* complaint, and claims (i) and (ii) of the *Bowie* complaint). To establish a claim under section 14(a) of the Exchange Act, plaintiffs need only allege that some part of a proxy statement "contain[s] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not misleading . . ." 15 U.S.C. § 78n. The requisite state of mind under this section is negligence. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1263 (N.D. Cal.); *Wilson v. Great American Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281-1301 (2d Cir. 1973).

Unlike Sherupski, Bowie does not allege violations of section 10(b) and Rule 10b-5, which require plaintiffs to allege fraudulent intent, and require plaintiff to plead those allegations with particularity. *See* 15 U.S.C. § 78u-4(b)(2); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). Bowie argues that therefore, if the same plaintiff and counsel bring both the section 10(b) and the section 14(a) claims, there is a danger that the section 14(a) claims will be "dismissed because they are engulfed in Sherupski's allegations that defendants engaged in fraudulent activity." Opp'n 2:11-12.

Bowie argues that the pleadings themselves provide a strong example of why the Court should name a separate plaintiff and counsel for the section 14(a) claims. According to the opposition,

> while counsel for Sherupski boasts that his Complaint "is 35 pages in length, consists of

5

> 132 paragraphs, and alleges 13 separate counts of violations," (*see* Motion at 9:15-16), only plaintiff Bowie's Complaint details the information necessary to maintain the Company's § 14(a) claim, including the dates on which the Board ordered the Company to send shareholders the Notice of [] Meeting of Stockholders and Proxy Statement between 2001 and 2005 (the "Definitive Proxy" or "Definitive Proxies") and which of the Individual Defendants caused and/or participated in issuing, filing and disseminating a particular Definitive Proxy.

Opp'n 3:19-25, citing *Bowie* Complaint ¶¶ 9-20, 41, 52.

The Court is not convinced of the utility of appointing separate lead plaintiff and counsel for the section 14(a) claims. While the *Bowie* Complaint appears to provide very detailed allegations relating to the section 14(a) claims, Bowie does not argue that Sherupski's 14(a) pleadings are deficient. Indeed, as Bowie points out, section 14(a) claims need not be pleaded with particularity; thus the fact that the *Sherupski* Complaint provides less than detailed allegations regarding section 14(a) violations does not necessarily compel the conclusion that Sherupski, his counsel, or his complaint are inadequate.

Moreover, there appears to be little risk that the section 14(a) claims will be treated lightly in favor of the section 10(b) claims. The allegations of false and misleading proxy statements, which form the basis of the section 14(a) claims, also appear to provide at least some of the basis for the 10(b) claims. For example, paragraphs 2 and 3 of the Sherupski Complaint allege:

> Between 1999 and present, Defendants also caused Openwave to file false and misleading statements with the Securities and Exchange Commission ("SEC"), *including Proxy Statements filed with the SEC* which stated that the options granted by Openwave carried with them an exercise price that was not less than the fair market value of Openwave stock on the date of grant and issuance. 3. In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be backdated to dates when the Company's shares were trading at or near the lowest price for that relevant period.

*Sherupski* Complaint ¶¶ 2-3 (emphasis added). It thus appears that the filing of false proxy statements is a basis for both the section 10(b) and the section 14(a) claims. The Court is therefore unpersuaded by Bowie's suggestion that in straining to prove the section 10(b) allegations, Sherupski and Hacker will fail to properly support the section 14(a) claims.

If the full efficiency of consolidating these actions is to be realized, the Court must select a limited number of lead plaintiffs and counsel. Four actions are being consolidated here; it seems somewhat counterproductive to maintain three lead plaintiffs (Sherupski, Hacker, and Bowie) and their counsels. Moreover, naming a separate lead plaintiff and counsel for just two of the claims, which do

not necessarily involve distinct questions of law or fact, does not seem the most efficient course. Three of the four plaintiffs in these actions support selection of Sherupski and Hacker as lead plaintiffs. Sherupski and Hacker have demonstrated substantial financial interest in the outcome of these actions. There is no indication that Sherupski and Hacker would "not fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation," in light of the eight factors identified by the Ninth Circuit. Fed. R. Civ. P. 23(1); *see Larson*, 900 F.2d at 1367. The Court therefore finds that naming a separate lead plaintiff and counsel for the section 14(a) claims would be inefficient, and accordingly GRANTS plaintiffs Henry Sherupski and Manfred Hacker's motion to appoint themselves as lead plaintiffs.

The Court also finds Sherupski and Hacker's selected counsel wholly adequate to serve as lead counsel. Both Lerach Coughlin and Scott & Scott have extensive experience in prosecuting shareholder derivative litigation arising out of illegal corporate activities. *See* Downs Dec., Exs. H, I. Three of the four plaintiffs support their selection as lead counsel, and the fourth plaintiff Bowie makes no attack on their adequacy or skill.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs Sherupski and Hacker's motion to consolidate actions and appoint themselves lead plaintiffs and their counsel lead counsel, and DENIES plaintiff Bowie's request to appoint him lead plaintiff and his counsel lead counsel with respect to defendants' alleged violations of sections 14(a) and 20(a) (as it relates to the section 14(a) claims) of the Exchange Act.

**IT IS SO ORDERED.**

Dated: October 11, 2006

SUSAN ILLSTON
United States District Judge